# Exhibit 1

**IN THE COURT OF COMMON PLEAS
SUMMIT COUNTY, OHIO**

SANDRA KURT

2022 JUN 22 PM 2: 10

SUMMIT COUNTY
CLERK OF COURTS

| | | |
|---|---|---|
| CHRISTOPHER LONGO, | ) | Case No. CV-2022-05-1754 |
| | ) | |
| Plaintiff, | ) | Judge *Cosgrove* |
| | ) | |
| v. | ) | |
| | ) | |
| THE AEM SERVICES, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER APPOINTING RECEIVER

This action came before the Court on Plaintiff Christopher Longo's ("Plaintiff") Motion to Appoint a Receiver. The Court finds the Motion to be well taken and, therefore, **GRANTS** it. The Court thus will appoint a Receiver to take possession of and to manage all the affairs of Defendant The AEM Services, LLC ("AEM"), and to further take control of all assets and real property held in or by that entity.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED,

1.      Mark E. Dottore (the "Receiver") is hereby appointed the receiver for all of the real and personal property, any and all cash and cash deposits, equipment, furniture, fixtures and deposit accounts held by third parties, the general intangibles, and all other assets arising out of, or pertaining to AEM, of whatever kind or nature, and the Receiver shall have all authority and power of a receiver under Ohio law and as ordered further by this Court. (Hereinafter, all of the assets described in this paragraph shall be referred to as the "Property").

2.      The Receiver shall take immediate possession, control, management, operation and charge of AEM and the Property. Pursuant to Ohio Revised Code Section 2735.04 and the Orders of this Court, and under the direction and control of this Court, the Receiver shall have the following powers and duties:

1

a.     The Receiver shall take immediate possession, control, management and charge of the Property's accounting books and records of whatever nature and wherever located, in the possession of AEM or Defendant Mark Dente ("Dente") or any other person or entity, including all information regarding the assets, liabilities, equity, income and expenses of the Property. The Receiver shall take immediate possession, control, management and charge of all of the Property's financial statements, (whether consolidated or by individual entity), ledgers and journals, balance sheets, trial balances, statements of cash flows, income statements, statements of retained earnings, accounting journals and books of original entry, including but not limited to (1) accounts receivable aging's, rent rolls, and any other documentation which indicate the amounts owing from lessees and other debtors of the Property on accounts receivable and from whom such amounts are or were owing and when any amounts were collected and deposited; (2) fixed asset ledgers, schedules, records, documentation and/or appraisals of the Property's equipment, motor vehicles, boats and their engines, accessories, furniture inventory, furnishings, and supplies; (3) inventory listings or other detail; (4) all information and documentation which relates or pertains to any checking, saving, banking and money management accounts of any kind or nature of the Property or into which any proceeds of the collection or sale of any asset of the Property have been deposited; (5) all accounts payable documentation and information and all correspondence or written documents regarding negotiations with current accounts or proposed accounts; (6) all information of whatever type or nature, regarding the payroll and benefits of the employees of the Property, including wage or salary information, medical insurance information, child support payments or other employee deductions withheld or to be withheld, and all information regarding the trust fund or withholding

2

taxes whether federal, state, or local and any information regarding any and all of the employer matching obligations or the employer payroll tax obligations; (7) all information and documentation of any asset transfers by AEM and Dente any time in the past; (8) all information and documentation regarding the federal, state and local tax liabilities of the Property, including any and all federal, state and local tax returns filed or unfiled, and any documents generated during the preparation and filing of tax returns; (9) all contracts and leases pertaining to the Property and/or to which AEM is a party; (10) all information and documentation of any other financial transaction or interest in and any asset of the Property which may be necessary or pertinent to the Receiver's operation and management of AEM's assets; and (11) any documentation that relates or pertains to AEM and is kept in the ordinary course of its business in connection with the record-keeping or accounting. The information described in this subparagraph shall hereinafter be referred to as the "Books and Records."

b.      The Receiver shall take immediate possession, control, management and charge of AEM and the Property, including all assets and property appertaining thereto consisting of all personal property, real property (including leasehold interests), all cash or cash equivalents including, but not limited to, rights, title and interest in and to all bank accounts, all accounts and notes receivable, all inventory of any type or nature, all furniture, fixtures, equipment, computers (hardware and software), and all general intangibles, including, but not limited to, all licenses and liquor licenses owned or utilized by the Property, rights in leases, rights to proceeds from any insurance or sales of equipment or other asset, all choses in action and causes of action, including avoidance actions for transfers of any of the assets of the Property for less than equivalent value against the transferees of those assets, and

3

any other asset or interest owned by Plaintiff or in which Plaintiff asserts an interest which has any value which pertains to the Property (collectively, "the Assets"), and the Books and Records and the Assets are hereby placed in *custodia legis* and are subject to the exclusive jurisdiction of this Court. Receiver shall not be charged with the responsibility to take possession of any real estate or other assets which had or have existing hazardous or toxic contamination nor shall the Receiver be required to take possession of any hazardous or toxic materials owned or used by AEM. Should the Receiver elect to take possession of, or exercise his dominion and control over, any real estate, hazardous or toxic materials, pollutants or contaminants, he shall do so in his capacity as Receiver for the Property.

c.      The Receiver shall have the authority to operate and manage AEM and the Property as he deems prudent in his sole discretion throughout the litigation, subject to further order of this Court. The Receiver shall preserve and care for any and all of the Property and utilize any and all of the Property to preserve and maximize the value of the Property.

d.      The Receiver is authorized to collect all profits, rents, receivables and revenues of any nature whatsoever generated from AEM and the Property and/or the business operations of AEM and Property and to pay all necessary expenses relating to said operations, including his fees and the fees of his attorneys, accountants and other professionals, as he deems prudent in his sole discretion, from funds in his possession, whether such funds are derived from the operation or the sale of AEM and the Property.

e.      The Receiver shall have the authority to maintain or purchase insurance from any agent or carrier, of any type reasonably necessary or desirable, on all the Property, subject

4

to maintaining adequate coverage appropriately and naming appropriate loss payees as any properly perfected security interests provide within the corresponding security agreement.

f.      The Receiver is authorized to establish or maintain one or more bank accounts in the Receiver's name for its operations as Receiver in this matter at any federally insured bank as reasonably needed to engage in business operations on behalf of AEM and the Property. The Receiver shall keep a true and accurate account of any and all receipts and disbursements which the Receiver shall receive or make as Receiver in the course of the operation of the Property.

g.      The Receiver is authorized to negotiate and effect an orderly sale, transfer, use or assignment of all or a portion of any of the Property in or outside of the ordinary course of business of AEM and, from the proceeds thereof, to pay the secured and unsecured indebtedness of the Property. Payments to creditors by the Receiver shall include trade indebtedness which arises during the course of the Receiver's operation of the Property, which shall be paid first from the sale proceeds, together with the fees and expenses of the Receiver and his attorneys, accountants and other professionals. The Receiver is authorized to conduct such a sale of the Assets in any manner which he, in his good faith and reasonable discretion, believes will maximize the proceeds received from the sale.

h.      The Receiver is authorized to institute, prosecute, or intervene in any lawsuit or summary proceeding against any other person(s) or entity(ies) to preserve and/or maximize the value of the Property or to obtain possession of any of the Property unlawfully in the possession of third parties.

i.  The Receiver is authorized but not required to defend actions again and may incur expenses to defend such actions to the extent that he believes, in his sole discretion, it will protect and preserve the Property.

j.  The Receiver is authorized to perform pursuant to the terms of any existing contracts executed by AEM and Dente in connection with the Property to the extent that the Receiver determines, in his sole discretion, that such performance will preserve and maximize the value of the Property. The Receiver may reject contracts not deemed to be in the interest of creditors of the estate, and the holder of any contract so rejected shall be allowed a claim as an unsecured creditor of the Property, said claim to be calculated consistent with the law.

k.  The Receiver is authorized to employ any assistants, servants, agents, counsel or other persons deemed necessary or desirable to assist the Receiver in diligently executing the duties imposed upon the Receiver by this Order and Ohio law.

3.  Notwithstanding the foregoing, the Receiver and the Receivership estate shall not be liable for the payment of taxes, assessments or utility charges pre-dating the date of this Order. Any individual or entity receiving a copy of this Order is hereby enjoined and restrained from discontinuing service to the Receiver or the Receivership estate based upon the non-payment of such taxes or utilities prior to the date of this Order and from attempting to collect taxes and utility charges from the Receiver pre-dating the date of this Order.

4.  AEM and Dente and any persons, firms or entities acting under the direction of AEM and Dente, and any third parties, persons, firms or entities, shall, upon presentation of a copy of this Order, identify the location of and deliver to the Receiver, any and all receivership property, both the Books and Records and the Assets, in the possession or under the control of such parties;

6

and all persons are enjoined and restrained (a) from payment of any amounts owing to AEM and Dente relating to the Property to anyone other than the Receiver, and (b) from in any way disturbing or interfering with the collection, management or sale of any of the Assets.

5.      All creditors, claimants, bodies politic, parties in interest, and their respective attorneys, servants, agents, and employees, and all other persons, firms, and corporations be, they hereby are, jointly and severally, enjoined and stayed from commencing or continuing any action at law or suit or proceeding in equity to foreclose any lien or enforce any claim against the Property, or its Books and Records or Assets, or against the Receiver, in any court.  The parties are further stayed from executing or issuing or causing the execution or issuance out of any Court of any writ, process, summons, attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with, or enforcing any claim or lien upon the Property owned by or in the possession of AEM, or the Receiver, and from doing any act or thing whatsoever to interfere with the Receiver in the discharge of his duties in this proceedings or with the exclusive jurisdiction of this Court over the Property, its Books and Records and Assets and the said Receiver.

6.      Parties in this case and their respective attorneys, servants, agents, and employees, and all other persons, firms, and corporations be, they hereby are, jointly and severally, enjoined and stayed from commencing any action at law or suit or proceeding in equity in any Court or to prosecute any claim, or to execute or issue or cause the execution or issuance out of any Court of any writ, process, summons, attachment or subpoena, against Mark E. Dottore, the individual, or any entity in which he holds an interest, without first obtaining permission of this appointing court. Such a lawsuit may be used to intimidate the Receiver and therefore interfere with the discharge of his duties in this proceeding.  Upon a request to sue Mark E. Dottore, the individual, or an entity

in which he holds an interest, by any party, the Court will undertake a review of the facts and circumstances, and upon notice and hearing, determine whether the suit is meritorious or interposed for the purpose of harassment of the Receiver.

7. AEM and Dente and their agents and employees, and any other party, shall turn over to the Receiver, as soon as possible or within three (3) days from the date of this Order, any and all Books and Records.

8. AEM and Dente and their agents and employees, and any other party, shall turn over to the Receiver, as soon as possible or within three (3) days from the date of this Order, all sums in existence on the date hereof that are related or pertain to, or derived from the Property, including, but not limited to (a) all cash on hand; (b) all cash equivalents and negotiable instruments (such as checks, notes, drafts or other related documents or instruments); and (c) all sums held in accounts in any financial institutions, including but not limited to, all sums of any kind relating to the use, enjoyment, possession, improvement or occupancy of all or any portion of the Property.

9. Except as directed by the Receiver, AEM, Dente, their affiliates, agents, officers, directors, shareholders, members, employees, representatives or creditors, and all other persons or entities, are hereby prohibited from taking any act for or on behalf of AEM, interfering in any way with the acts of the Receiver, and from in any way, manner or means wasting, disposing of, transferring, selling, assigning, pledging, canceling, concealing, interfering with, or hypothecating any of the Books and Records or the Property. Upon the request of the Receiver, the foregoing persons and entities shall cooperate and affirmatively assist the Receiver in making available to the Receiver or his agents, the Books and Records and the Property. Nothing in this paragraph shall be construed to require a waiver of any attorney-client privilege.

8

10.     The Receiver, and his agents, including his counsel and any accountants that are appointed by the Court, shall be entitled to reasonable compensation for services rendered and reimbursement for expenses incurred which are (a) related to the Receiver's duties, rights, and obligations under this order or any future orders of the Court and applicable law; (b) related to the administration, management, protection or liquidation of the Property; or (c) the defense or prosecution of any claim or suit brought by or against the Receiver or by the Receiver against any person or entity.   Such compensation of the Receiver and his agents, his counsel and his accountants shall be paid consistent with Paragraphs 11 through 14 of this Order Appointing Receiver and awarded from the Receivership estate and/or pursuant to Ohio Revised Code Section 2333.27.  If the Receivership does not have funds to pay the fees and expenses of the Receiver and his attorneys, accountants and other professionals, those fees will be assessed as costs of this case.

11.     The Receiver shall be compensated pursuant to the Receiver's normal billing rate of $400.00 per hour plus reimbursement for all reasonable and necessary out of pocket costs and expenses.

12.     From time to time, the Receiver utilizes the assistance and expertise of persons on the payroll of his companies.  When additional compensation is appropriate under Local Rule 9.02(F), these individuals are billed according to their regular hourly rates. If the services of others are required, they will be billed at an hourly rate consistent with or below the rates charged by others in this community with similar skills and ability, as is true with all hourly rates charged under this Order.

13.     Routine accounting services are included in the percentage rates charged by the Receiver.   Routine accounting services include bookkeeping, bank account review and reconciliation, and the filing of periodic reports required pursuant to Local Rule 9.02(B).  The

9

filing of tax returns, other governmental reporting requirements, assistance to any governmental law enforcement agency, and other non-bookkeeping accounting functions will be charged at ordinary, hourly rates.

14. The Receiver may retain counsel in this matter. Said counsel will charge the Receivership at his/her ordinary and customary rates, and will work to promote efficiency in the proceedings wherever possible.

15. The Receiver and his attorneys, accountants, or other professionals hired by him, may, at the Receiver's option, file with this Court monthly applications (or less frequent, if he deems appropriate), for payment of fees and expenses incurred in the conduct of this receivership estate, and each such application shall be served via U.S. Mail upon the Plaintiff, the Defendants, and other interested parties who have requested that such applications be served upon them. The Receiver shall be authorized to pay the fees and expenses requested by the Receiver or his attorneys, accountants or other professionals in any such application after ten (10) days have expired after service has been effected, without further order of this Court. If any party or person shall file an objection to the fees and expenses of the Receiver, or of his attorneys, accountants or other professionals, the Court shall consider the objection in the ordinary course. Pending consideration of the objection, the Receiver shall be authorized to pay any portion of the fees and expenses not subject to the objection.

16. The Receiver shall have full and unrestricted access to all of the Property, and AEM and Dente and all of their and AEM's officers, directors, shareholders, employees and agents, and any other party, are directed to take all steps necessary to give the Receiver access to the premises and to give the Receiver all keys to the facilities.

10

17.     The Receiver may, from time to time, make payments to creditors on account of pre-receivership claims, especially secured creditors, according to their interests as they may appear.  The Receiver, in his sole discretion, shall determine when or if it is appropriate to make payments to creditors, if any.  All payments made prior to the conclusion of the Receivership shall be made after application to the Court and pursuant to Court Order.

18.     The Receiver shall, under his authority to operate and manage the businesses of AEM, operate and manage such businesses in compliance with applicable statutes.  Nothing in this Order shall be read or interpreted, however, to abrogate the Receiver's immunities from personal liability for conduct related to his receivership duties.

19.     The Bond of the Receiver is set at $100.00.

20.     The terms of this Order shall continue in full force and effect unless and until further order of this Court.

**IT IS SO ORDERED.**

_____6-22-22_____
Date

_____
Judge   #22JA1384

**Submitted by:**

*/s/ Nicholas R. Oleski*
Robert T. Glickman (0059579)
Nicholas R. Oleski (0095808)
MCCARTHY, LEBIT, CRYSTAL
  & LIFFMAN CO., LPA
1111 Superior Avenue East
Suite 2700
Cleveland, Ohio 44114
Phone: (216) 696-1422
Email: rtg@mccarthylebit.com
        nro@mccarthylebit.com

*Counsel for Plaintiff Christopher Longo*

11

SANDRA KURT IN THE COURT OF COMMON PLEAS
SUMMIT COUNTY, OHIO

2022 JUL 15  AM 11: 44

CHRISTOPHER LONGO,

SUMMIT COUNTY,
CLERK OF COURTS
-v-

THE AEM SERVICES, LLC, *et. al.*,

Defendants.

) CASE NO. CV-2022-05-1754
)
)
)
)
) JUDGE PATRICIA A. COSGROVE
)
)
)
)
)
)
)
)

## FIRST AMENDED ORDER APPOINTING RECEIVER

This cause came to be heard upon the Motion for Turnover of AEM Investments, LLC and AEM Wholesale, LLC and their Assets to Include Them into the Receivership Assets to be Administered by the Receiver on Behalf of Creditors (the "**Motion**") filed by the Receiver, (the "**Receiver**" or "**Mr. Dottore**") requesting that the ownership and assets of two entities, to wit, AEM Investments, LLC and AEM Wholesale, LLC (together, the "**Affiliates**") be turned over to the Receivership to be administered with the Receivership Estate. Having considered the pleadings, motions, responses, replies, and the statements of counsel, the testimony of the witnesses and the documents and other evidence, the Court now finds as follows:

There are no objections to the Receiver's Motion;

Notice is adequate in the circumstances;

Mark Dente, the 100% owner of the equity interest in each Affiliate has consented to the turnover of ownership and assets in each Affiliate to the Receiver;

{00032675-1 }

The turnover of the ownership and assets of the Affiliates is in the best interest of all parties to the case and appropriate and necessary to preserve, manage and dispose of the Assets (as hereinafter defined) and to prevent waste; and

Mr. Dottore is qualified to act as Receiver of each of the Affiliates in connection with his duties as Receiver of The AEM Services LLC under the Court's June 22, 2022, Receiver Order (the "**Receiver Order**");

Accordingly, after due consideration and for good cause shown, said Motion is hereby <u>GRANTED</u> and the Receiver Order is hereby amended as follows:

**NOW THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

1.      Mr. Dottore, whose business address is 2344 Canal Road, Cleveland, Ohio 44113, is hereby appointed the receiver for AEM Investments, LLC ("**Investments**") and AEM Wholesale, LLC ("**Wholesale**"), and all of their real and personal property, any and all cash and cash deposits, equipment, furniture, fixtures and deposit accounts held by third parties, the general intangibles, and all other assets arising out of, or pertaining to each entity, of whatever kind or nature, and together with The AEM Services LLC ("**Services**") and all of its assets of the same kind and nature as previously described above and in the June 22, 2022 Receiver Order shall hereinafter constitute the Receivership Estate. No further bond or oath is required by law.

2.      As shall be more fully described below, the Receiver is hereby authorized to take possession and control of all of the property of Investments,

Wholesale and Services (collectively, the "**Receivership Entities**") including any real property titled in the name of any of the Receivership Entities wheresoever located (the "**Real Property**"), any and all tax attributes, and all other assets of whatever kind or nature belonging to the Receivership Entities and together with the Real Property, the "**Assets**" or the "**Receivership Assets**") and the Receiver shall have all authority and power of a receiver under Ohio law, and as is more fully described below, specific authorization to (i) receive, manage and operate the Receivership Assets; (ii) join additional parties to this litigation pursuant to the Ohio Rules of Civil Procedure when necessary; (iii) file litigation, including but not limited to, actions to recover property transferred or for turnover of any of the Assets when turnover is otherwise appropriate under Ohio law, actions to determine ownership of the Assets, actions to avoid liens and to recover transferred, alienated and consigned Assets; and actions to determine the extent and priority of lien interests in the Assets; (iv) consolidate actions currently pending before this Court or otherwise; (v) retain and pay suitable professionals to assist him with his duties; (vi) maintain or purchase insurance of the Assets; (vii) lease, sell or use the Assets both in and outside the ordinary course of business; (viii) repair and pay such other extraordinary expenses as are necessary for the Assets and to authorize funds for future repairs, construction and extraordinary expense as needed without further application to this Court; and further, to allow the Receiver to take possession of any of the Assets which are *in custodia legis*; and for such other and

further purposes as are necessary to protect and operate the Assets safely and professionally; and

3.　　The Receiver shall take immediate possession, control, management, operation and charge of the Receivership Assets whether located in Ohio or in any other state.  Pursuant to R.C. 2735.04 and the Orders of this Court, and under the direction and control of this Court, the Receiver shall have the following powers and duties:

a.　　The Receiver shall take immediate possession, control, management and charge of the Receivership Entities' (i) Assets and (ii) accounting books and records of whatever nature and wherever located, whether in Ohio or in any other state, whether in the possession of the party, or in the possession of any other person or entity, and whether kept in hard copy, electronically on hard drives, on servers or cellphones or "in the cloud," or on any other medium upon which intelligence or information can be ascertained (the "**Computer Storage**"), including all information regarding the assets, liabilities, equity, income and expenses of the Receivership Entities, and including financial statements, ledgers and journals, balance sheets, trial balances, statements of cash flows, income statements, statements of retained earnings, accounting journals and books of original entry (the "**Books and Records**"). The Receiver shall have the sole and exclusive control over the Receivership Entities' (i) computer systems, electronic maintenance and storage and computer servers (the "**Computer System**"); and (ii) computer passwords of any type or nature including the methods and means of access to the Books and Records (the "**Passwords**"). All

persons with authority over the Computer System, the Computer Storage, or in the possession of any Passwords shall immediately turn over possession and control to the Receiver and the Receiver shall have sole and exclusive authority to save, amend, revise or delete information on the Computer System or in Computer Storage. For avoidance of doubt, the Books and Records shall include hard copy or electronic copies of (i) accounts receivable agings, rent rolls, and any other documentation which indicate the amounts owing from lessees and other debtors of the Receivership Entities on accounts receivable and from whom such amounts are or were owing and when any amounts were collected and deposited; (ii) fixed asset ledgers, schedules, records, documentation and/or appraisals of any of the Receivership Entities' equipment, motor vehicles, boats and their engines, accessories, furniture inventory, furnishings, and supplies; (iii) inventory listings or other detail; (iv) all information and documentation which relates or pertains to any checking, saving, banking and money management accounts of any kind or nature belonging to any of the Receivership Entities, or into which any proceeds of the collection or sale of any asset of the Receivership Assets have been deposited; (v) all accounts payable documentation and information and all correspondence or written documents regarding negotiations with current accounts or proposed accounts; (vi) all information of whatever type or nature, regarding the payroll and benefits of the employees of any of the Receivership Entities, including wage or salary information, medical insurance information, child support payments or other employee deductions withheld or to be withheld, and all information regarding withholding taxes

whether federal, state, or local and any information regarding any and all of the employer matching obligations or the employer payroll tax obligations; (vii) all information and documentation of any asset transferred by the Receivership Entities any time in the past; (viii) all information and documentation regarding the federal, state and local tax liabilities and tax attributes of the Receivership Entities, including any and all federal, state and local tax returns filed or unfiled, and any documents generated during the planning of any construction project, including the Real Property, and the preparation and filing of tax returns for the Receivership Entities; (ix) all contracts and leases pertaining to the Receivership Assets and/or to which any of the Receivership Entities are a party; (x) all information and documentation of any other financial transaction or interest in and any asset of any of the Receivership Entities which may be necessary or pertinent to the Receiver's operation and management of the Receivership Assets; (xi) letters, facsimiles, emails, notes to file, reports, memoranda, summaries, analyses, opinions, recordings or transcripts, contracts, offers, drafts, charts, calendar or diary entries, appointment books, memoranda of conversations, books, records, invoices, and bills, and any drafts of the foregoing; and (xi) any other documentation that relates or pertains to any of the Receivership Entities.

b.      The Receiver shall take immediate possession, control, management and charge of the Receivership Assets, whether located in Ohio or in any other state, including all assets and property appertaining thereto consisting of all personal property, real property (including leasehold interests), all cash or cash

equivalents including, but not limited to, rights, title and interest in and to all bank accounts, all accounts and notes receivable, all inventory of any type or nature, all furniture, fixtures, equipment, computers (hardware and software), and all general intangibles, including, but not limited to, all licenses, permits, certifications, and liquor licenses applied for, owned or utilized by the Receivership Entities, rights in leases, rights to proceeds from any insurance or sales of equipment or other asset, all choses in action and causes of action, including avoidance actions for transfers of any of the Receivership Assets for less than equivalent value against the transferees of those assets, and any other asset or interest owned by the Receivership Entities or in which any of the Receivership Entities asserts an interest which has any value which pertains to the Receivership Assets, and the Books and Records and the Receivership Assets are hereby placed in *custodia legis* and are subject to the exclusive jurisdiction of this Court. Receiver shall not be charged with the responsibility to take possession of any real estate or other assets which had or have existing hazardous or toxic contamination, nor shall the Receiver be required to take possession of any hazardous or toxic materials owned or used by any of the Receivership Entities.  Should the Receiver elect to take possession of, or exercise his dominion and control over, any real estate, hazardous or toxic materials, pollutants, or contaminants, he shall do so in his capacity as Receiver for the Receivership Assets.

c.    The Receiver shall have the authority to operate and manage the Receivership Assets as he deems prudent in his sole discretion throughout the

litigation, subject to further order of this Court. The Receiver shall preserve and care for any and all of the Receivership Assets and utilize any and all of the Receivership Assets to preserve and maximize the value of the Receivership Assets.

d.      The Receiver shall immediately implement the use of any state or federal historic or other tax credits (the "**Tax Credits**") that may be available to the Receivership Entities and take all necessary actions to preserve the value and prevent the waste of the Tax Credits.

e.      The Receiver is authorized to collect all profits, rents, receivables and revenues of any nature whatsoever generated from the Receivership Assets and/or the business operations of the Receivership Assets and to pay all necessary expenses relating to said operations, including his fees and the fees of his attorneys, accountants and other professionals, as he deems prudent in his sole discretion, from funds in his possession, whether such funds are derived from the operation of the Receivership Assets.

f.      The Receiver shall have the authority without further order of this Court to maintain or purchase insurance from any agent or carrier, of any type reasonably necessary or desirable, on all the Receivership Assets, subject to maintaining adequate coverage appropriately and naming appropriate loss payees as any properly perfected security interests provide within the corresponding security agreement.

g.      The Receiver is authorized to establish or maintain one or more bank accounts in the Receiver's name for its operations as Receiver in this matter at

any federally insured bank as reasonably needed to engage in business operations on behalf of the Assets. The Receiver shall keep a true and accurate account of any and all receipts and disbursements which the Receiver shall receive or make as Receiver in the course of the operation of the Receivership Assets.

h.      The Receiver is hereby authorized to negotiate, enter into and execute leases of any portion or part of the premises of the Real Property at rental rates and for terms of years consistent with those that the market will bear, which he, in his business judgment concludes are in the best interest of the parties or creditors of the Receivership Estate.

i.      The Receiver is authorized to negotiate and effect an orderly sale, transfer, use or assignment of all or a portion of any of the Receivership Assets in or outside of the ordinary course of business and, from the proceeds thereof, to pay the secured and unsecured indebtedness of the Receivership Assets, including the Real Property. Payments to creditors by the Receiver shall include trade indebtedness which arises during the course of the Receiver's operation of the Receivership Assets, which shall be paid first from the sale proceeds, together with the fees and expenses of the Receiver and his attorneys, accountants and other professionals. The Receiver is authorized to conduct such a sale of the Receivership Assets in any manner which he, in his good faith and reasonable discretion, believes will maximize the proceeds received from the sale.

{00032675-1}                                            9

j.      The Receiver is authorized to institute, prosecute, or intervene in any lawsuit or summary proceeding against any other person(s) or entity(ies) to preserve and/or maximize the value of the Assets or to obtain possession of any of the Assets unlawfully in the possession of third parties. The Receiver is authorized to file for consolidation and/or joint administration of any or all litigation pertaining to the Receivership Entities with this action. If the Receiver in his sole discretion determines it to be in the interest of creditors, the Receiver may remove this action to United States District Court.

k.      The Receiver is authorized to shall succeed to management of each of the Receivership Entities, to be the sole and exclusive managing member, representative, custodian, and, its Liquidator, as that term is described in each entity's Operating Agreement, with the sole and exclusive power and authority to manage and direct the business and financial affairs of the Receivership Entities and its liquidation and wind-down, including without limitation, the authority to petition for protection under the Bankruptcy Code, 11 U.S.C. §§ 101 et. seq. (the "**Bankruptcy Code**") for the Receivership Entities and in connection therewith be and be deemed a debtor in possession for the Receivership Entities in proceedings under the Bankruptcy Code and prosecute such adversary proceedings and other matters as may be permitted under the Code and/or applicable law.

l.      The Receiver is authorized to design and implement a cost-effective notice procedure to provide information to creditors and/or a claims procedure to expeditiously administer the claims of creditors should he believe in his

sole discretion that there is a likelihood that there will be a distribution to unsecured creditors.

m.      The Receiver is authorized to institute proceedings to domesticate this order in any other federal or state court jurisdiction where the Assets, the Books and Records, the Computer Storage, the Computer System and/or the Passwords may be located and to seek appointment within that jurisdiction as receiver over the Assets, the Books and Records, the Computer Storage, the Computer System and or the Passwords that may be located in that foreign jurisdiction. The Receiver is further authorized to take any reasonable action to obtain possession or otherwise secure the Assets, the Books and Records, the Computer Storage, the Computer System and/or the Passwords through the legal process of that foreign jurisdiction.

n.      The Receiver is authorized but not required to defend actions against the Assets or the Receivership Entities and may incur expenses to defend such actions to the extent that he believes, in his sole discretion, it will protect and preserve the Assets.

o.      The Receiver is authorized to perform pursuant to the terms of any existing contracts executed by the Receivership Entities in connection with the Assets to the extent that the Receiver determines, in his sole discretion, that such performance will preserve and maximize the value of the Assets.  The Receiver may reject contracts not deemed to be in the interest of creditors of the estate, and the holder of any contract so rejected shall be allowed a claim as an

unsecured creditor of the Assets, said claim to be calculated consistent with the law.

p.    The Receiver is authorized to employ any assistants, servants, agents, tax accountants, financial accountants, attorneys, or other persons deemed necessary or desirable to assist the Receiver in diligently executing the duties imposed upon the Receiver by this Order and pursuant to Ohio law.

q.    The Receiver is authorized to repair the Assets, and/or its fixtures and appurtenances as needed. Such repairs shall be made at the time and in the way that the Receiver, in his sole discretion, deems reasonable and necessary in the circumstances.  Such repairs and construction include the time and expense of relocating tenants or caring for tenants while their suites are under construction.

r.    The Receiver is authorized to expend Receivership Assets to complete construction of real estate properties owned and/or controlled by the Receivership Entities where he, in his sole discretion, believes that completing the construction is in the interest of creditors of the Receivership Entities.

3.    Notwithstanding the foregoing, the Receiver and the Receivership Estate shall not be liable for the payment of taxes, assessments or utility charges pre-dating the date of this Order.  Any individual or entity receiving a copy of this Order is hereby enjoined and restrained from discontinuing service to the Receiver or the Receivership Estate based upon the non-payment of such taxes or utilities prior to the date of this Order and from attempting to collect taxes and utility charges from the Receiver pre-dating the date of this Order.

4.      The Receivership Entities and any persons, firms or entities acting under the direction of any of the Receivership Entities, and any third parties, persons, firms or entities, shall, upon presentation of a copy of this Order, identify the location of and deliver to the Receiver, the Assets, Books and Records and Passwords and any other receivership property in the possession or under the control of such parties; and all persons are enjoined and restrained from: (a) payment of any amounts owing to the Receivership Entities relating to the Assets to anyone other than the Receiver; (b) engaging in any activity that would cause the destruction of electronic data, including but not limited to, disabling or unplugging the Computer System or in Computer Storage; (c) altering, modifying or deleting electronic data on the Computer System or in Computer Storage; and (c) in any way disturbing or interfering with the collection, management or sale of any of the Assets or the Books and Records.

5.      All creditors, claimants, bodies politic, parties in interest, and their respective attorneys, servants, agents, and employees, and all other persons, firms, and corporations be, and they hereby are, jointly and severally, enjoined and stayed from commencing or continuing any action at law or suit or proceeding in equity to foreclose any lien or enforce any claim against the Assets, or the Books and Records, or against the Receiver, in any court. The parties are further stayed from executing or issuing or causing the execution or issuance out of any court of any writ, process, summons, attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with, or enforcing any claim or lien upon the Assets, the Computer System, the Computer Storage, or the Receiver, and

from doing any act or thing whatsoever to interfere with the Receiver in the discharge of his duties in this proceedings or with the exclusive jurisdiction of this Court over the Assets, and the Books and Records and the said Receiver.

6.      Parties in this case and their respective attorneys, servants, agents, and employees, and all other persons, firms, and corporations be, and they hereby are, jointly and severally, enjoined and stayed from commencing any action at law or suit or proceeding in equity in any court or to prosecute any claim, or to execute or issue or cause the execution or issuance out of any court of any writ, process, summons, attachment or subpoena, against Mr. Dottore, the individual, or any entity in which he holds an interest, without first obtaining permission of this appointing Court.  Such a lawsuit may be used to intimidate the Receiver and therefore interfere with the discharge of his duties in this proceeding.  Upon a request to sue Mr. Dottore, the individual, or an entity in which he holds an interest, by any party, the Court will undertake a review of the facts and circumstances, and upon notice and hearing, determine whether the suit is meritorious or interposed for the purpose of harassment of the Receiver.

7.      The Receivership Entities and their agents and employees, and any other party, shall turn over to the Receiver, as soon as possible or within three (3) days from the date of this Order, any and all Books and Records.

8.      The Receivership Entities and their agents and employees, and any other party, shall turn over to the Receiver, as soon as possible or within three (3) days from the date of this Order, the Passwords and all sums in existence on the date hereof that are related or pertain to, or derived from the Assets, including, but not limited to (a) all

cash on hand; (b) all cash equivalents and negotiable instruments (such as checks, notes, drafts or other related documents or instruments); and (c) all sums held in accounts in any financial institutions, including but not limited to, all sums of any kind relating to the use, enjoyment, possession, improvement or occupancy of all or any portion of the Assets.

9.     Except as directed by the Receiver,  the Receivership Entities, their affiliates, agents, officers, directors, shareholders, members, employees, representatives or creditors, and all other persons or entities, are hereby prohibited from taking any act for or on behalf of the Receivership Entities, interfering in any way with the acts of the Receiver, and from in any way, manner or means wasting, disposing of, transferring, selling, assigning, pledging, canceling, concealing, interfering with, or hypothecating any of the Books and Records or the Assets.  Upon the request of the Receiver, the foregoing persons and entities shall cooperate and affirmatively assist the Receiver in making available to the Receiver or his agents, the Books and Records and the Assets, the Computer Storage, the Computer System and/or the Passwords. Nothing in this paragraph shall be construed to require a waiver of any attorney-client privilege.

10.     The Receiver, and his agents, including his attorneys and any accountants or other professionals that are appointed by the Court, shall be entitled to reasonable compensation for services rendered and reimbursement for expenses incurred which are (a) related to the Receiver's duties, rights, and obligations under this order or any future orders of the Court and applicable law; (b) related to the administration, management, protection or liquidation of the Assets; or (c) related to the defense or prosecution of any claim or suit brought by or against the Receiver. Such compensation

of the Receiver and his agents, his counsel and his accountants shall be paid

(a) consistent with Ohio law; (b) in accordance with Paragraphs 10 through 14 of this

Order; and (c) from the Receivership Estate. As and for the payment of the Receiver's

fees and expenses and the fees and expenses of his attorneys, accountants and other

professionals, the Receiver is hereby granted a lien upon all of the Receivership Assets,

which lien shall be a charge upon all property of whatsoever kind or nature in the

Receivership Estate and the lien shall extend to all proceeds of or arising from the

Assets or other property in the Receivership Estate, including all after-acquired

property which but for the date of the acquisition would have been an Asset of the

Receivership Estate. If the Receivership Estate does not have funds to pay the fees and

expenses of the Receiver and his attorneys, accountants and other professionals, those

fees shall be assessed as costs of this case and of other pending cases against the

Receivership Entities as this Court may determine the equities of such a result.

11.    The Receiver shall be compensated at his normal hourly billing rate,

which is the rate he charges in cases of like kind and complexity. At this time, the

Receiver's billing rate is $400.00 per hour plus reimbursement for all reasonable and

necessary out of pocket costs and expenses.

12.    From time to time, the Receiver utilizes the assistance and expertise of

persons on the payroll of his companies.  These individuals are billed hourly as follows:

administrative personnel ($125.00); paralegals ($175.00); Thomas Dottore ($325.00).

Charles Dottore ($325.00), Camille Dottore (225.00).  If the services of others are

required, they will be billed at an hourly rate consistent with or below the rates charged

by others in this community with similar skills and ability, as is true with all hourly rates charged under this Order.

13.    The Receiver is authorized to retain accounting services including bookkeeping, bank account review and reconciliation, the filing of periodic reports required by this Order and under Ohio law, the filing of tax returns, fulfilling other governmental reporting requests and requirements, providing assistance to any governmental law enforcement agency, and other non-bookkeeping accounting functions. The Receiver will utilize the services of Mr. David S. Linscott, CPA, CIRA, at the rate of $375.00 per hour.

14.    The Receiver and his attorneys, accountants, or other professionals hired by him, may, at the Receiver's option, file with this Court monthly applications (or less frequent, if he deems appropriate), for payment of fees and expenses incurred in the conduct of this Receivership Estate, and each such application shall be served via U.S. Mail upon the Plaintiff, the Defendant, and other interested parties who have requested that such applications be served upon them.  The Receiver shall be authorized to pay the fees and expenses requested by the Receiver or his attorneys, accountants or other professionals in any such application after ten (10) days have expired after service has been perfected, without further order of this Court. If any party or person shall file an objection to the fees and expenses of the Receiver, or of his attorneys, accountants or other professionals, the Court shall consider the objection in the ordinary course.  Pending consideration of the objection, the Receiver shall be authorized to pay any portion of the fees and expenses not subject to the objection.

15. The Receiver shall have full and unrestricted access to all of the Assets, the Receivership Entities the Computer Storage, the Computer System and/or the Passwords and its officers, directors, shareholders, employees and agents, and any other party, are directed to take all steps necessary to give the Receiver access to the premises and to give the Receiver all keys to the facilities.

16. Nothing in this Order shall be read or interpreted as requiring any person to extend credit to the Receiver or the Receivership Entities and all persons shall continue to have all rights and remedies to which they are entitled under their agreements with the parties and the Receivership Entities and pursuant to Ohio law, subject to the terms of this Order.

17. The Receiver may, from time to time, make payments to creditors on account of pre-receivership claims, especially secured creditors, according to their interests as they may appear. The Receiver, in his sole discretion, shall determine when or if it is appropriate to make payments to creditors, if any. All payments made prior to the conclusion of the Receivership shall be made after application to the Court and pursuant to Court Order.

18. The Receiver shall, under his authority to operate and manage the businesses of the Receivership Entities, operate and manage such businesses in compliance with applicable statutes. Nothing in this Order shall be read or interpreted, however, to abrogate the Receiver's immunities from personal liability for conduct related to his receivership duties.

20. The terms of this Order shall continue in full force and effect unless and until further order of this Court.

**IT IS SO ORDERED** this _15_ day of _July_, 2022.

_____
JUDGE PATRICIA COSGROVE

**EXHIBIT A**

IN THE COURT OF COMMON PLEAS
SUMMIT COUNTY, OHIO

SANDRA KURT

2022 AUG 11 AM 9:53

SUMMIT COUNTY
CLERK OF COURTS

| | |
|---|---|
| CHRISTOPHER LONGO, | ) CASE NO. CV-2022-05-1754 |
| | ) |
| Plaintiff, | ) |
| | ) JUDGE PATRICIA A. COSGROVE |
| -v- | ) |
| | ) |
| THE AEM SERVICES, LLC, *et. al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

---

### SECOND AMENDED ORDER APPOINTING RECEIVER

---

On July 1, 2022, Sheryl Maxwell, the Director of the State of Ohio Department of Commerce, through the Office of the State of Ohio Attorney General, David Yost, (the "**Department of Commerce**") commenced an action against Mark Dente and other named defendants; Case No. CV 2022-07-2228 (the "**AG Case**") seeking, among other relief, the appointment of a Receiver over The AEM Services, LLC, The AEM Services, LLC D/B/A AEM Funding, AEM Wholesale, LLC, AEM Investments, LLC, AEM Productions, LLC, AEM Capital Fund, Ltd., Landmark Property Development, Ltd. f/k/a Landmark Real Estate Endeavors and their subsidiaries, under their names or any other names, their agents, servants, representatives, employees, partners, officers, directors, affiliates, successors and assigns, with the authority granted pursuant to R.C. § 1707.27 and with the authority, if necessary, to liquidate the assets of them for the benefit of investors and creditors.

On June 22, 2022, upon the *Ex Parte* Motion of the Plaintiff, the Court entered an Order Appointing Receiver (the "**Initial Receiver Order**") appointing

{00032987-1}

Mark E. Dottore (the "**Receiver**") over the assets of The AEM Investments

Services, LLC. Subsequently, on July 15, 2022, this Court entered the First

Amended Order Appointing Receiver (the "**Amended Receiver Order**", and

collectively with the Initial Order, the "**Receiver Order**"), adding AEM

Investments, LLC and AEM Wholesale, LLC as companies whose business

operation, as well as all real and personal property owned by these entities to the

receivership.

This Court has been informed that the parties to the AG Case have agreed

that the personal and real property of additional persons or entities should also be

subject to the receivership. Accordingly, after due consideration and for good cause

shown, the Receiver Order is hereby amended as follows:

**NOW THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED
THAT:**

1.     The Receiver, whose business address is 2344 Canal Road, Cleveland,

Ohio 44113, is hereby appointed the receiver for: The AEM Services LLC ("**AEM

Services**"); AEM Investments, LLC ("**Investments**") and AEM Wholesale, LLC

("**Wholesale**"), Mark Dente, Sharon Dente and Anthony Dente (the **Dentes**"),

Unlimited Acquisitions, LLC ("**Acquisitions**"); AEM Productions, LLC

"**Productions**"); AEM Real Estate Group, LLC ("**Real Estate**"); AEM Capital

Fund, LTD ("**Capital**"); The Mark and Sharon Dente Living Trust (the "**Trust**");

A&J RE Holdings, LLC ("**A&J**")and Landmark Property Development, fka

Landmark Real Estate Endeavors (collectively the "**Receivership Entities**") and

all of their real and personal property, any and all cash and cash deposits, equipment, furniture, fixtures and deposit accounts held by third parties, the general intangibles, and all other assets arising out of, or pertaining to each entity, of whatever kind or nature, and all of its assets of the same kind and nature as previously described above and in the Receiver Orders shall hereinafter constitute the Receivership Estate. No further bond or oath is required by law.

2.      As shall be more fully described below, the Receiver is hereby authorized to take possession and control of all of the property of the Receviership Entities including any real property titled in the name of any of the Receivership Entities wheresoever located (the "**Real Property**"), any and all tax attributes, and all other assets of whatever kind or nature belonging to the Receivership Entities and together with the Real Property, the "**Assets**" or the "**Receivership Assets**") and the Receiver shall have all authority and power of a receiver under Ohio law, and as is more fully described below, specific authorization to (i) receive, manage and operate the Receivership Assets; (ii) join additional parties to this litigation pursuant to the Ohio Rules of Civil Procedure when necessary; (iii) file litigation, including but not limited to, actions to recover property transferred or for turnover of any of the Assets when turnover is otherwise appropriate under Ohio law, actions to determine ownership of the Assets, actions to avoid liens and to recover transferred, alienated and consigned Assets; and actions to determine the extent and priority of lien interests in the Assets; (iv) consolidate actions currently pending before this Court or otherwise; (v) retain and pay suitable professionals to assist

him with his duties; (vi) maintain or purchase insurance of the Assets; (vii) lease, sell or use the Assets both in and outside the ordinary course of business; (viii) repair and pay such other extraordinary expenses as are necessary for the Assets and to authorize funds for future repairs, construction and extraordinary expense as needed without further application to this Court; and further, to allow the Receiver to take possession of any of the Assets which are *in custodia legis*; and for such other and further purposes as are necessary to protect and operate the Assets safely and professionally; and

3. The Receiver shall take immediate possession, control, management, operation and charge of the Receivership Assets whether located in Ohio or in any other state. Pursuant to R.C. 2735.04 and the Orders of this Court, and under the direction and control of this Court, the Receiver shall have the following powers and duties:

a. The Receiver shall take immediate possession, control, management and charge of the Receivership Entities' (i) Assets and (ii) accounting books and records of whatever nature and wherever located, whether in Ohio or in any other state, whether in the possession of the party, or in the possession of any other person or entity, and whether kept in hard copy, electronically on hard drives, on servers or cellphones or "in the cloud," or on any other medium upon which intelligence or information can be ascertained (the **"Computer Storage"**), including all information regarding the assets, liabilities, equity, income and expenses of the Receivership Entities, and including financial statements, ledgers and journals, balance sheets, trial balances, statements of cash flows,

income statements, statements of retained earnings, accounting journals and books of original entry (the "**Books and Records**"). The Receiver shall have the sole and exclusive control over the Receivership Entities' (i) computer systems, electronic maintenance and storage and computer servers (the "**Computer System**"); and (ii) computer passwords of any type or nature including the methods and means of access to the Books and Records (the "**Passwords**"). All persons with authority over the Computer System, the Computer Storage, or in the possession of any Passwords shall immediately turn over possession and control to the Receiver and the Receiver shall have sole and exclusive authority to save, amend, revise or delete information on the Computer System or in Computer Storage. For avoidance of doubt, the Books and Records shall include hard copy or electronic copies of (i) accounts receivable agings, rent rolls, and any other documentation which indicate the amounts owing from lessees and other debtors of the Receivership Entities on accounts receivable and from whom such amounts are or were owing and when any amounts were collected and deposited; (ii) fixed asset ledgers, schedules, records, documentation and/or appraisals of any of the Receivership Entities' equipment, motor vehicles, boats and their engines, accessories, furniture inventory, furnishings, and supplies; (iii) inventory listings or other detail; (iv) all information and documentation which relates or pertains to any checking, saving, banking and money management accounts of any kind or nature belonging to any of the Receivership Entities, or into which any proceeds of the collection or sale of any asset of the Receivership Assets have been deposited; (v) all accounts payable documentation

and information and all correspondence or written documents regarding negotiations with current accounts or proposed accounts; (vi) all information of whatever type or nature, regarding the payroll and benefits of the employees of any of the Receivership Entities, including wage or salary information, medical insurance information, child support payments or other employee deductions withheld or to be withheld, and all information regarding withholding taxes whether federal, state, or local and any information regarding any and all of the employer matching obligations or the employer payroll tax obligations; (vii) all information and documentation of any asset transferred by the Receivership Entities any time in the past; (viii) all information and documentation regarding the federal, state and local tax liabilities and tax attributes of the Receivership Entities, including any and all federal, state and local tax returns filed or unfiled, and any documents generated during the planning of any construction project, including the Real Property, and the preparation and filing of tax returns for the Receivership Entities; (ix) all contracts and leases pertaining to the Receivership Assets and/or to which any of the Receivership Entities are a party; (x) all information and documentation of any other financial transaction or interest in and any asset of any of the Receivership Entities which may be necessary or pertinent to the Receiver's operation and management of the Receivership Assets; (xi) letters, facsimiles, emails, notes to file, reports, memoranda, summaries, analyses, opinions, recordings or transcripts, contracts, offers, drafts, charts, calendar or diary entries, appointment books, memoranda of conversations, books, records, invoices, and bills, and any

drafts of the foregoing; and (xi) any other documentation that relates or pertains to any of the Receivership Entities.

b.      The Receiver shall take immediate possession, control, management and charge of the Receivership Assets, whether located in Ohio or in any other state, including all assets and property appertaining thereto consisting of all personal property, real property (including leasehold interests), all cash or cash equivalents including, but not limited to, rights, title and interest in and to all bank accounts, all accounts and notes receivable, all inventory of any type or nature, all furniture, fixtures, equipment, computers (hardware and software), and all general intangibles, including, but not limited to, all licenses, permits, certifications, and liquor licenses applied for, owned or utilized by the Receivership Entities, rights in leases, rights to proceeds from any insurance or sales of equipment or other asset, all choses in action and causes of action, including avoidance actions for transfers of any of the Receivership Assets for less than equivalent value against the transferees of those assets, and any other asset or interest owned by the Receivership Entities or in which any of the Receivership Entities asserts an interest which has any value which pertains to the Receivership Assets, and the Books and Records and the Receivership Assets are hereby placed in *custodia legis* and are subject to the exclusive jurisdiction of this Court. Receiver shall not be charged with the responsibility to take possession of any real estate or other assets which had or have existing hazardous or toxic contamination, nor shall the Receiver be required to take possession of any hazardous or toxic materials owned or used by any of the

{00032987-1 }                                7

Receivership Entities. Should the Receiver elect to take possession of, or exercise his dominion and control over, any real estate, hazardous or toxic materials, pollutants, or contaminants, he shall do so in his capacity as Receiver for the Receivership Assets.

c.      The Receiver shall have the authority to operate and manage the Receivership Assets as he deems prudent in his sole discretion throughout the litigation, subject to further order of this Court. The Receiver shall preserve and care for any and all of the Receivership Assets and utilize any and all of the Receivership Assets to preserve and maximize the value of the Receivership Assets.

d.      The Receiver shall immediately implement the use of any state or federal historic or other tax credits (the "**Tax Credits**") that may be available to the Receivership Entities and take all necessary actions to preserve the value and prevent the waste of the Tax Credits.

e.      The Receiver is authorized to collect all profits, rents, receivables and revenues of any nature whatsoever generated from the Receivership Assets and/or the business operations of the Receivership Assets and to pay all necessary expenses relating to said operations, including his fees and the fees of his attorneys, accountants and other professionals, as he deems prudent in his sole discretion, from funds in his possession, whether such funds are derived from the operation of the Receivership Assets.

f.      The Receiver shall have the authority without further order of this Court to maintain or purchase insurance from any agent or carrier, of any type

reasonably necessary or desirable, on all the Receivership Assets, subject to maintaining adequate coverage appropriately and naming appropriate loss payees as any properly perfected security interests provide within the corresponding security agreement.

g.      The Receiver is authorized to establish or maintain one or more bank accounts in the Receiver's name for its operations as Receiver in this matter at any federally insured bank as reasonably needed to engage in business operations on behalf of the Assets.  The Receiver shall keep a true and accurate account of any and all receipts and disbursements which the Receiver shall receive or make as Receiver in the course of the operation of the Receivership Assets.

h.      The Receiver is hereby authorized to negotiate, enter into and execute leases of any portion or part of the premises of the Real Property at rental rates and for terms of years consistent with those that the market will bear, which he, in his business judgment concludes are in the best interest of the parties or creditors of the Receivership Estate.

i.      The Receiver is authorized to negotiate and effect an orderly sale, transfer, use or assignment of all or a portion of any of the Receivership Assets in or outside of the ordinary course of business and, from the proceeds thereof, to pay the secured and unsecured indebtedness of the Receivership Assets, including the Real Property. Payments to creditors by the Receiver shall include trade indebtedness which arises during the course of the Receiver's operation of the Receivership Assets, which shall be paid first from the sale proceeds,

{00032987-1 }                                            9

together with the fees and expenses of the Receiver and his attorneys, accountants and other professionals. The Receiver is authorized to conduct such a sale of the Receivership Assets in any manner which he, in his good faith and reasonable discretion, believes will maximize the proceeds received from the sale.

j.      The Receiver is authorized to institute, prosecute, or intervene in any lawsuit or summary proceeding against any other person(s) or entity(ies) to preserve and/or maximize the value of the Assets or to obtain possession of any of the Assets unlawfully in the possession of third parties. The Receiver is authorized to file for consolidation and/or joint administration of any or all litigation pertaining to the Receivership Entities with this action. If the Receiver in his sole discretion determines it to be in the interest of creditors, the Receiver may remove this action to United States District Court.

k.      The Receiver is authorized to shall succeed to management of each of the Receivership Entities, to be the sole and exclusive managing member, representative, custodian, and, its Liquidator, as that term is described in each entity's Operating Agreement, with the sole and exclusive power and authority to manage and direct the business and financial affairs of the Receivership Entities and its liquidation and wind-down, including without limitation, the authority to petition for protection under the Bankruptcy Code, 11 U.S.C. §§ 101 et. seq. (the **"Bankruptcy Code"**) for the Receivership Entities and in connection therewith be and be deemed a debtor in possession for the Receivership Entities in proceedings under the

{00032987-1 }                                                   10

Bankruptcy Code and prosecute such adversary proceedings and other matters as may be permitted under the Code and/or applicable law.

l.      The Receiver is authorized to design and implement a cost-effective notice procedure to provide information to creditors and/or a claims procedure to expeditiously administer the claims of creditors should he believe in his sole discretion that there is a likelihood that there will be a distribution to unsecured creditors.

m.      The Receiver is authorized to institute proceedings to domesticate this order in any other federal or state court jurisdiction where the Assets, the Books and Records, the Computer Storage, the Computer System and/or the Passwords may be located and to seek appointment within that jurisdiction as receiver over the Assets, the Books and Records, the Computer Storage, the Computer System and or the Passwords that may be located in that foreign jurisdiction. The Receiver is further authorized to take any reasonable action to obtain possession or otherwise secure the Assets, the Books and Records, the Computer Storage, the Computer System and/or the Passwords through the legal process of that foreign jurisdiction.

n.      The Receiver is authorized but not required to defend actions against the Assets or the Receivership Entities and may incur expenses to defend such actions to the extent that he believes, in his sole discretion, it will protect and preserve the Assets.

o.      The Receiver is authorized to perform pursuant to the terms of any existing contracts executed by the Receivership Entities in connection with the

Assets to the extent that the Receiver determines, in his sole discretion, that such performance will preserve and maximize the value of the Assets. The Receiver may reject contracts not deemed to be in the interest of creditors of the estate, and the holder of any contract so rejected shall be allowed a claim as an unsecured creditor of the Assets, said claim to be calculated consistent with the law.

p.     The Receiver is authorized to employ any assistants, servants, agents, tax accountants, financial accountants, attorneys, or other persons deemed necessary or desirable to assist the Receiver in diligently executing the duties imposed upon the Receiver by this Order and pursuant to Ohio law.

q.     The Receiver is authorized to repair the Assets, and/or its fixtures and appurtenances as needed. Such repairs shall be made at the time and in the way that the Receiver, in his sole discretion, deems reasonable and necessary in the circumstances. Such repairs and construction include the time and expense of relocating tenants or caring for tenants while their suites are under construction.

r.     The Receiver is authorized to expend Receivership Assets to complete construction of real estate properties owned and/or controlled by the Receivership Entities where he, in his sole discretion, believes that completing the construction is in the interest of creditors of the Receivership Entities.

3.     Notwithstanding the foregoing, the Receiver and the Receivership Estate shall not be liable for the payment of taxes, assessments or utility charges pre-dating the date of the Initial Receiver Order. Any individual or entity receiving

a copy of this Order is hereby enjoined and restrained from discontinuing service to the Receiver or the Receivership Estate based upon the non-payment of such taxes or utilities prior to the date of this Order and from attempting to collect taxes and utility charges from the Receiver pre-dating the date of the Initial Receiver Order.

4.    The Receivership Entities and any persons, firms or entities acting under the direction of any of the Receivership Entities, and any third parties, persons, firms or entities, shall, upon presentation of a copy of this Order, identify the location of and deliver to the Receiver, the Assets, Books and Records and Passwords and any other receivership property in the possession or under the control of such parties; and all persons are enjoined and restrained from: (a) payment of any amounts owing to the Receivership Entities relating to the Assets to anyone other than the Receiver; (b) engaging in any activity that would cause the destruction of electronic data, including but not limited to, disabling or unplugging the Computer System or in Computer Storage; (c) altering, modifying or deleting electronic data on the Computer System or in Computer Storage; and (c) in any way disturbing or interfering with the collection, management or sale of any of the Assets or the Books and Records.

5.    All creditors, claimants, bodies politic, parties in interest, and their respective attorneys, servants, agents, and employees, and all other persons, firms, and corporations be, and they hereby are, jointly and severally, enjoined and stayed from commencing or continuing any action at law or suit or proceeding in equity to foreclose any lien or enforce any claim against the Assets, or the Books and Records, or against the Receiver, in any court. The parties are further stayed from executing or issuing or

causing the execution or issuance out of any court of any writ, process, summons, attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with, or enforcing any claim or lien upon the Assets, the Computer System, the Computer Storage, or the Receiver, and from doing any act or thing whatsoever to interfere with the Receiver in the discharge of his duties in this proceedings or with the exclusive jurisdiction of this Court over the Assets, and the Books and Records and the said Receiver.

6.  Parties in this case and their respective attorneys, servants, agents, and employees, and all other persons, firms, and corporations be, and they hereby are, jointly and severally, enjoined and stayed from commencing any action at law or suit or proceeding in equity in any court or to prosecute any claim, or to execute or issue or cause the execution or issuance out of any court of any writ, process, summons, attachment or subpoena, against Mr. Dottore, the individual, or any entity in which he holds an interest, without first obtaining permission of this appointing Court. Such a lawsuit may be used to intimidate the Receiver and therefore interfere with the discharge of his duties in this proceeding. Upon a request to sue Mr. Dottore, the individual, or an entity in which he holds an interest, by any party, the Court will undertake a review of the facts and circumstances, and upon notice and hearing, determine whether the suit is meritorious or interposed for the purpose of harassment of the Receiver.

7.  The Receivership Entities and their agents and employees, and any other party, shall turn over to the Receiver, as soon as possible or within three (3) days from the date of this Order, any and all Books and Records.

8.      The Receivership Entities and their agents and employees, and any other party, shall turn over to the Receiver, as soon as possible or within three (3) days from the date of this Order, the Passwords and all sums in existence on the date hereof that are related or pertain to, or derived from the Assets, including, but not limited to (a) all cash on hand; (b) all cash equivalents and negotiable instruments (such as checks, notes, drafts or other related documents or instruments); and (c) all sums held in accounts in any financial institutions, including but not limited to, all sums of any kind relating to the use, enjoyment, possession, improvement or occupancy of all or any portion of the Assets.

9.      Except as directed by the Receiver, the Receivership Entities, their affiliates, agents, officers, directors, shareholders, members, employees, representatives or creditors, and all other persons or entities, are hereby prohibited from taking any act for or on behalf of the Receivership Entities, interfering in any way with the acts of the Receiver, and from in any way, manner or means wasting, disposing of, transferring, selling, assigning, pledging, canceling, concealing, interfering with, or hypothecating any of the Books and Records or the Assets.  Upon the request of the Receiver, the foregoing persons and entities shall cooperate and affirmatively assist the Receiver in making available to the Receiver or his agents, the Books and Records and the Assets, the Computer Storage, the Computer System and/or the Passwords. Nothing in this paragraph shall be construed to require a waiver of any attorney-client privilege.

10.     The Receiver, and his agents, including his attorneys and any accountants or other professionals that are appointed by the Court, shall be entitled to reasonable compensation for services rendered and reimbursement for expenses incurred which

are (a) related to the Receiver's duties, rights, and obligations under this order or any future orders of the Court and applicable law; (b) related to the administration, management, protection or liquidation of the Assets; or (c) related to the defense or prosecution of any claim or suit brought by or against the Receiver. Such compensation of the Receiver and his agents, his counsel and his accountants shall be paid (a) consistent with Ohio law; (b) in accordance with Paragraphs 10 through 14 of this Order; and (c) from the Receivership Estate. As and for the payment of the Receiver's fees and expenses and the fees and expenses of his attorneys, accountants and other professionals, the Receiver is hereby granted a lien upon all of the Receivership Assets, which lien shall be a charge upon all property of whatsoever kind or nature in the Receivership Estate and the lien shall extend to all proceeds of or arising from the Assets or other property in the Receivership Estate, including all after-acquired property which but for the date of the acquisition would have been an Asset of the Receivership Estate. If the Receivership Estate does not have funds to pay the fees and expenses of the Receiver and his attorneys, accountants and other professionals, those fees shall be assessed as costs of this case and of other pending cases against the Receivership Entities as this Court may determine the equities of such a result.

11.    The Receiver shall be compensated at his normal hourly billing rate, which is the rate he charges in cases of like kind and complexity. At this time, the Receiver's billing rate is $400.00 per hour plus reimbursement for all reasonable and necessary out of pocket costs and expenses.

12.    From time to time, the Receiver utilizes the assistance and expertise of persons on the payroll of his companies. These individuals are billed hourly as follows:

administrative personnel ($125.00); paralegals ($175.00); Thomas Dottore ($325.00).

Charles Dottore ($325.00), Camille Dottore (225.00).  If the services of others are

required, they will be billed at an hourly rate consistent with or below the rates charged

by others in this community with similar skills and ability, as is true with all hourly

rates charged under this Order.

13.    The Receiver is authorized to retain accounting services including

bookkeeping, bank account review and reconciliation, the filing of periodic reports

required by this Order and under Ohio law, the filing of tax returns, fulfilling other

governmental reporting requests and requirements, providing assistance to any

governmental law enforcement agency, and other non-bookkeeping accounting

functions. The Receiver will utilize the services of Mr. David S. Linscott, CPA, CIRA, at

the rate of $375.00 per hour.

14.    The Receiver and his attorneys, accountants, or other professionals hired

by him, may, at the Receiver's option, file with this Court monthly applications (or less

frequent, if he deems appropriate), for payment of fees and expenses incurred in the

conduct of this Receivership Estate, and each such application shall be served via U.S.

Mail upon the Plaintiff, the Defendant, and other interested parties who have

requested that such applications be served upon them.  The Receiver shall be

authorized to pay the fees and expenses requested by the Receiver or his attorneys,

accountants or other professionals in any such application after ten (10) days have

expired after service has been perfected, without further order of this Court. If any

party or person shall file an objection to the fees and expenses of the Receiver, or of his

attorneys, accountants or other professionals, the Court shall consider the objection in

the ordinary course. Pending consideration of the objection, the Receiver shall be authorized to pay any portion of the fees and expenses not subject to the objection.

15. The Receiver shall have full and unrestricted access to all of the Assets, the Receivership Entities the Computer Storage, the Computer System and/or the Passwords and its officers, directors, shareholders, employees and agents, and any other party, are directed to take all steps necessary to give the Receiver access to the premises and to give the Receiver all keys to the facilities.

16. Nothing in this Order shall be read or interpreted as requiring any person to extend credit to the Receiver or the Receivership Entities and all persons shall continue to have all rights and remedies to which they are entitled under their agreements with the parties and the Receivership Entities and pursuant to Ohio law, subject to the terms of this Order.

17. The Receiver may, from time to time, make payments to creditors on account of pre-receivership claims, especially secured creditors, according to their interests as they may appear. The Receiver, in his sole discretion, shall determine when or if it is appropriate to make payments to creditors, if any. All payments made prior to the conclusion of the Receivership shall be made after application to the Court and pursuant to Court Order.

18. The Receiver shall, under his authority to operate and manage the businesses of the Receivership Entities, operate and manage such businesses in compliance with applicable statutes. Nothing in this Order shall be read or interpreted, however, to abrogate the Receiver's immunities from personal liability for conduct related to his receivership duties.

20.   The terms of this Order shall continue in full force and effect unless and

until further order of this Court.

**IT IS SO ORDERED** this ___10___ day of ___August___, 2022.

JUDGE PATRICIA COSGROVE

SANDRA KURT

**IN THE COURT OF COMMON PLEAS**
**SUMMIT COUNTY, OHIO**

2022 NOV -2 PM 3: 39

SUMMIT COUNTY
CLERK OF COURTS

| | | |
|---|---|---|
| CHRISTOPHER LONGO, | ) | CASE NO.: CV-2022-05-1754 |
| | ) | |
| | ) | JUDGE: PATRICIA COSGROVE |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER PARTIALLY VACATING** |
| THE AEM SERVICES, LLC., et al., | ) | **THE SECOND AMENDED ORDER** |
| | ) | **APPOINTING RECEIVER,** |
| Defendants. | ) | **DOCKETED August 11, 2022** |

This matter is before the Court upon remand from the Ninth District Court of Appeals and the Motions to Vacate the Second Amended Order Appointing Receiver, docketed August 11, 2022, ("Order") filed by Defendant Mark Dente, Non-Party Sharon Dente, Non-Party Anthony Dente and Non-Party Unlimited Acquisitions, LLC. ("Movant(s)") Said motions have not been opposed. The Movants have agreed, however, to limit the motions to Defendant Mark Dente and Non-Parties Sharon Dente, Anthony Dente, Unlimited Acquisitions, LLC., and The Mark and Sharon Dente Living Trust.

The Court finds that these motions have been filed within a reasonable time and the movants possess potentially meritorious grounds to object to the Order. Furthermore, sufficient grounds have been established under Civ. R. 60(B) to justify vacating the Order.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED**, that the Order is vacated only as to Defendant Mark Dente and Non-Parties Sharon Dente, Anthony Dente, Unlimited Acquisitions, LLC., and The Mark and Sharon Dente Living Trust. Any and all monies, accounts or assets sequestered, frozen, placed in escrow, turned over, or seized as a result of said Order shall be released, paid out and/or returned to the appropriate Movant forthwith.

**IT IS SO ORDERED:**

JUDGE PATRICIA A. COSGROVE

APPROVED BY:

*s/ Mary K. Whitmer*

Mary K. Whitmer, Esq.
James W. Ehrman, Esq.
Robert, M. Stefancin, Esq.
M. Logan O'Connor, Esq.
**WHITMER & EHRMAN, LLC**
2344 Canal Road, Suite 401
Cleveland, OH 44113
mkw@WEadvocate.net
rms@WEadvocate.net
jwe@WEadvocate.net
mlo@WEadvocate.net

*Attorneys for Receiver,*
*Mark E. Dottore*

*s/ Michael A. Creveling*

Michael A. Creveling, Esq.
**CREVELING & CREVELING**
3045 Smith Road, Suite 450
Fairlawn, OH 44333
mcrevlaw@gmail.com

*Attorney for Defendant,*
*Mark Dente*

*s/ E. Spencer Muse*

E. Spencer Muse, Esq.
3045 Smith Road, Suite 450
Fairlawn, Ohio 44333
edmuselaw@gmail.com

*s/ Elisa A. Staats*

Elisa A. Staats, Esq.
679 West Market Street
Akron, Ohio 44303
attyelisa@mac.com

*s/ Paul W. Flowers*

Paul W. Flowers, Esq. (#0046625)
Melissa A. Ghrist, Esq. (#0096882)
**FLOWERS & GRUBE**
Terminal Tower, 40th Floor
50 Public Square
Cleveland, Ohio 44113
(216) 344-9393
pwf@pwfco.com
mag@pwfco.com

*Attorneys for Non-Parties,*
*Anthony Dente, Sharon Dente, and*
*Unlimited Acquisitions, LLC*